Estate of Reuben A. Baer (deceased), Celeste S. Baer, Administratrix, and Celeste S. Baer v. Commissioner.
Estate of Baer v. Commissioner
Docket No. 6715-65.
United States Tax Court
T.C. Memo 1967-34; 1967 Tax Ct. Memo LEXIS 227; 26 T.C.M. (CCH) 170; T.C.M. (RIA) 67034; February 27, 1967
Celeste S. Baer, pro se, 1564 Hacienda Place, Pomona, Calif. Richard L. Fishman, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency in the income tax of petitioners for the taxable year 1963 in the amount of $800.67. Petitioners *228 have abandoned certain claims for miscellaneous deductions disallowed in the respondent's notice of deficiency. Four issues remain for decision: 1. Were amounts expended by petitioners for tuition and board at La Verne College for their totally deaf daughter, Barbara, deductible as medical expenses under section 213, Internal Revenue Code of 1954, and the regulations promulgated thereunder? 2. Was an amount paid by petitioners to a "notetaker," who assisted Barbara, deductible as a medical expense? 3. Was the cost of transportation for returning Barbara from Gallaudet College in Washington, D.C., to her home in Pomona, California, a deductible medical expense? 4. Are petitioners entitled to a casualty loss on a Doughboy swimming pool destroyed by a windstorm? Findings of Fact Some of the facts have been stipulated and are found accordingly. Reuben A. Baer, now deceased, and Celeste S. Baer (herein called petitioner) were husband and wife, and on the date the petition was filed herein their residence was 1564 Hacienda Place, Pomona, California. They filed a timely joint Federal income tax return for the year 1963 with the district director of internal *229 revenue at Los Angeles, California. For several years the petitioner has been a teacher of the deaf and is presently a part-time administrator and consultant in the education of the deaf. In 1943, her daughter, Barbara, was born congenitally deaf as a result of German measles which petitioner had during pregnancy. Barbara suffers from what is known as nerve deafness. She has never had any hearing to learn language and speech through her ears as those with normal hearing do. Such deaf persons are faced with a lifetime disability and difficulty in learning language, speech and communication. After Barbara was examined at Johns Hopkins University in Baltimore in 1946, petitioner began her efforts to teach Barbara speech and lipreading. At first, Barbara attended until she was thirteen a private day school for the deaf in San Antonio, Texas, which taught the oral method of communication. She then entered the Lexington School for the Deaf in New York City and later a public junior high school. Petitioner had to convice the public school officials that Barbara could cope with the work. With her mother's help Barbara handled it well. She went through the seventh and eighth grades in San *230 Antonio and to Union High School, Vacaville, California, in the ninth grade. She graduated from Eisenhower High School in Rialto, California, in 1962. Barbara was then enrolled and attended a large junior college that had some 12,000 day students. The structure of classes and the training and instruction she received there were incompatible with her handicap. She failed and it created some psychological and emotional problems for her. Her parents sought the advice of a California Vocational Rehabilitation Counselor, who advised them to send Barbara to Gallaudet College in Washington, D.C., where she could live among other deaf persons and learn the sign language method of communication, which was the only method used at Gallaudet. Barbara was sent to Gallaudet. When she got there, the isolation from normal hearing people was a traumatic experience for her. Her mother said it was like "living on Mars." The students and the instructors did not talk. She became emotionally distressed by the experience and asked her parents if she could come home. They paid the transportation cost ( $150) for her return to California by air. At this point her parents, who had four other normal children, *231 were faced with a desperate situation. There is no college for the deaf in the United States which specializes in the oral method of communication. They knew that Barbara could not be permitted to sit around home and do nothing, especially with the thought that she was then, after 19 years, a failure. They sought help from La Verne College, a denominational and coeducational liberal arts institution with an enrollment of about 500. La Verne College had a good speech department, headed by a Mr. Borghi, a speech therapist. After conferring with the officials at La Verne, it was agreed that Barbara would be admitted probationally on the condition that she live in the dormitory, although her home was only three miles away. That was the only way those at La Verne believed they could get to know Barbara, assist her with lipreading and speech, and assimilate her into the educational life there. Barbara was the only deaf student in attendance at La Verne when she was admitted. Everyone at La Verne - the students, the instructors, the deans, the head of the speech department - took a special interest in and assisted her. One girl, who was a good academic student and later Barbara's roommate, *232 attended the same classes, took notes for Barbara and after class met with her to interpret and explain things. The petitioners paid this girl $200 in 1963 for her "notetaker" services. At the time Barbara enrolled at La Verne College her reading (grade) level was just above the ninth grade. Barbara entered La Verne primarily to improve her lipreading, speech and understanding, so that she might eventually become independent. Since her handicap is largely a language handicap the curriculum designed for her consisted of special classes in the speech department - speech correction and aural rehabilitation - as well as courses in English, grammar, composition, literature, all of which help to improve lipreading, comprehension and oral communication. The special attention and training given Barbara at La Verne steadily improved her lipreading ability, her written language, her speech, her vocabulary, her reading understanding, her psychological and emotional well-being and her general education. In short, it improved and alleviated her handicap of total deafness. A physician, Samuel P. Chunn, recommended this procedure for the improvement of Barbara's handicap. He stated in a letter: *233 I have known Barbara J. Baer for the past 3 1/2 years. I am familiar with her medical care and have on occasion treated her. It was my recommendation that due to her psychological state she be placed in a small college where she can continue her education in an environment where special attention can be given her handicap of total deafness. Based on my observations during the first few months of the 1963-1964 school year, it is my opinion that the continuance of this environment is indicated for her continued well-being and is medically indicated. In 1963 the petitioners paid tuition for Barbara at La Verne in the amount of $1,050 and paid $750 for dormitory costs (board and room). Petitioners claimed these amounts, as well as the sums paid for the notetaker and transportation, as expenses for medical care in their 1963 income tax return. All were disallowed by respondent. In 1960 the petitioners purchased for $350 a Doughboy swimming pool, a metal structure above ground with a plastic liner to hold the water. In 1963 it was destroyed in a windstorm. It blew over and was torn beyond repair. Petitioner introduced no evidence to establish the fair market value of the swimming *234 pool immediately before and after the casualty. Opinion Section 213 of the Internal Revenue Code of 1954 allows a deduction for amounts paid for medical care. [1] The applicable regulations provide that for educational costs to be treated as a medical expense the individual must attend an "institution" or "special school" with resources for alleviating the particular mental or physical handicap and such resources must be a principal reason for the individual's presence there. [2]
*235 Although line-drawing may be difficult here as everywhere, that is what courts are for. Surprisingly, respondent chooses the hard line. He contends that La Verne College is not a "special" institution or school; that Barbara was there merely to obtain a general education; that the mitigation of her handicap was only incidental; and, consequently, that the entire amounts spent for tuition, as well as for room and board, are nondeductible personal expenses. Petitioners take the opposite view. As in Hobart J. Hendrick, 35 T.C. 1223, 1235-1238 (1961), we conclude from these unusual facts and circumstances that the purpose of Barbara's attendance at the La Verne was twofold, viz, to receive special attention and training which would improve her lipreading, speech, comprehension, and ability to communicate as well as to receive a regular college education. Respondent has recognized in Rev. Rul. 55-261, 1955 C.B. 307, that the cost of special education or training of a deaf person is a deductible medical expense. The revenue ruling reads, in part, as follows: Section 39.23(x)-(d)(1) of Regulations 118 provides, in part, that "allowable deductions under 23(x) *236 will be confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness. Under this provision, it is held that the cost of special instruction or training, such as in speech and lip reading, designed to alleviate the loss of speech which is attributable to deafness and to compensate in part for the loss of the sense of hearing is deductible as a medical expense under section 23(x) of the Code. See also Donovan v. Campbell, Jr., an unreported case (N.D. Tex., holding deductible as a medical expense the cost of tuition paid to a school at which individual attention and opportunity for lipreading were such as to mitigate and alleviate a deafness handicap of the taxpayer's son. Therefore, using our best judgment, we draw the line in favor of petitioners to the extent of $1,050 out of the total expenses ($1,800) claimed and hold that such sum constitutes a deductible medical expense. We have so concluded since, in any event, it seems to us that the cost for room and board falls into the category of a nondeductible personal expense. Cf. Commissioner v. Bilder, 369 U.S. 499 (1962), where the Supreme Court stated *237 that the purpose of Congress, in enacting section 213(e)(1)(A), was to deny deductions for personal or living expenses incidental to medical care other than the cost of transportation. On the second issue we hold that the amount paid to the "notetaker" was for the primary purpose of alleviating Barbara's physical defect of deafness and, therefore, is deductible as a medical expense. In principle, this is no different than the cost and maintenance of a "seeing-eye" dog for a blind person (see section 1.213-1(e)(1)(iii), Income Tax Regs.); a tape recorder allowed to further the education of a child losing his eyesight (Rev. Rul. 58-223, 1958-1 C.B. 156); or amounts paid by a taxpayer to have someone accompany his blind child throughout the school day to guide him while walking (Rev. Rul. 64-173, 1964-1 (Part I) C.B. 121). With respect to the cost of returning Barbara to California from Gallaudet College in Washington, D.C., respondent contends that Gallaudet does not qualify as a "special school" because it merely provides a "normal education" for deaf persons. [3] He therefore argues that the transportation was not paid "primarily *238 for and essential to medical care." On the facts of this case we cannot agree with such contention. It is true, as her mother testified, that Barbara went to Washington to gain an education at Gallaudet, but the important question is - an education in what? Obviously a principal reason for sending Barbara to Gallaudet was to teach her the use of sign language since she was then only familiar with the oral method of communication. The improvement of her general education was, of course, an ultimate objective. In these particular circumstances the Commissioner's regulation, section 1.213-1(e)(1)(v)(a), provides that the cost of medical care includes the cost of attending a special school designed to compensate for or overcome a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. *239 We think the teaching of sign language also qualifies. Consequently, we hold that the air transportation paid by petitioners is deductible as a medical expense under section 213(e)(1)(B). [4]
Finally, as to the claimed casualty loss, we sustain respondent's determination. The petitioners have failed to prove what the fair market value of the Doughboy swimming pool was immediately before it was destroyed by wind or what its fair market value was immediately after the casualty. See section 1.165-7(b)(1)(i), Income Tax Regs. Absent this information, we are unable to apply the general rule for measuring the loss, i.e., the difference between the fair market value of the property damaged immediately before and after the casualty. In order to reflect the adjustments conceded by petitioners and our conclusions on the disputed issues. Decision will be entered under Rule *240 50. Footnotes
1. SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) Allowance of Deduction. - There shall be allowed as a deduction the following amounts of the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152): * * *
(e) Definitions. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or ↩
2. Sec. 1.213-1, Income Tax Regs.
* * *
(e) Definitions - (1) General. (i) The term "medical care" includes the diagnosis, cure mitigation, treatment or prevention of disease. Expenses paid for "medical care" shall include those paid for the purpose of affecting any structure or function of the body, for accident or health insurance, or for transportation primarily for and essential to medical care. * * *
(v) The cost of in-patient hospital care (including the cost of meals and lodging therein) is an expenditure for medical care. The extent to which expenses for care in an institution other than a hospital shall constitute medical care is primarily a question of fact which depends upon the condition of the individual and the nature of the services he receives (rather than the nature of the institution). A private establishment which is regularly engaged in providing the types of care or services outlined in this subdivision shall be considered an institution for purposes of the rules provided herein. In general, the following rules will be applied: (a) Where an individual is in an institution because his condition is such that the availability of medical care (as defined in subdivisions (i) and (ii) of this subparagraph) in such institution is a principal reason for his presence there, and meals and lodging are furnished as a necessary incident to such care, the entire cost of medical care and meals and lodging at the institution, which are furnished while the individual requires continual medical care, shall constitute an expense for medical care. For example, medical care includes the entire cost of institutional care for a person who is mentally ill and unsafe when left alone. While ordinary education is not medical care, the cost of medical care includes the cost of attending a special school for a mentally or physically handicapped individual, if his condition is such that the resources of the institution for alleviating such mental or physical handicap are a principal reason for his presence there. In such a case, the cost of attending such a special school will include the cost of meals and lodging, if supplied, and the cost of ordinary education furnished which is incidental to the special services furnished by the school. Thus, the cost of medical care includes the cost of attending a special school designed to compensate for or overcome a physical handicap, in order to qualify the individual for future normal education or for normal living, such as a school for the teaching of braille or lip reading. Similarly, the cost of care and supervision, or of treatment and training, of a mentally retarded or physically handicapped individual at an institution is within the meaning of the term "medical care."↩
3. Gallaudet College was established to provide a liberal higher education for deaf persons who need special facilities to compensate for their loss of hearing. It functions under the Department of Health, Education, and Welfare. See 68 Stat. 1422; D.C. Code 31-1001 et seq.↩
4. We need not, and do not, decide here whether tuition and transportation for Gallaudet students, already thoroughly trained in the use of sign language, are deductible as medical expenses.↩